[Crim. No. 4552. In Bank. Nov. 14, 1944.]

THE PEOPLE, Respondent, v. SAMUEL McCOY, Appellant.

Albert G. Bergman for Appellant.

Robert W. Kenny, Attorney General, David K. Lener and Frank Richards, Deputies Attorney General, Fred N. Howser, District Attorney, and Jere J. Sullivan and Robert Wheeler, Deputies District Attorney, for Respondent.

CURTIS, J.—The defendant was tried upon an information charging in count I an assault with intent to commit rape and in count II an assault with a deadly weapon. The jury returned a verdict of not guilty as to the first charge and guilty as to the second. From the judgment of conviction and the order denying his motion for a new trial the defendant prosecutes this appeal.

As grounds for reversal the defendant urges the following points: (1) Insufficiency of the evidence to sustain the verdict

of guilty; (2) errors of law committed by the court during the trial; (3) refusal of the trial court to give certain proposed instructions; and (4) prejudicial misconduct on the part of both the deputy district attorney who prosecuted the cause and the trial judge.

The factual background of the assault charge upon which the defendant was convicted appears from the record to be as follows: The alleged offense occurred about 11:45 o'clock in the evening of March 28, 1943, when the defendant, a Negro, approached the prosecutrix on the sidewalk a few minutes after she had alighted from a streetcar at the corner of West Adams Street and Sixth Avenue, in the city of Los Angeles, and was walking alone toward her home. As the defendant came abreast of her he flourished a knife but said nothing. She backed away, but the defendant continued toward her and knocked her to the pavement by physical contact with the weight of his body. While she lay prone on the sidewalk, the defendant stood in a bent position over her holding the knife suspended a few inches above her face. As she started to scream the defendant placed his other hand over her mouth with such force and violence as to cause the inside of her lip to bleed, and he said "Don't make any noise or I'll use this knife (or words to that effect)." Finally, she did succeed in working herself free enough to scream for help, and then, while the defendant was standing a bit to the right, she kicked him in the groin, whereupon he straightened up and ran away. Following this encounter with the defendant—some few minutes in duration—the prosecutrix had various scratches on her hands as evidence of her struggle.

With regard to his first point, the appellant urges that the evidence was insufficient to establish his identity as the perpetrator of the alleged crime. The record does not support his contention. At the trial the prosecutrix, in identifying the appellant as her assailant, expressly referred to the place of the attack as near the intersection where she alighted from the streetcar and stated that the lighting standard there permitted her, though the evening "was dark as any evening would be around midnight," to observe the appellant's features as he ran from the scene toward said intersection, exposing his face to the light. The appellant challenges the force of this identification testimony in relation to alleged uncertainties appearing in her account at the prelimi-

nary hearing in this matter, as developed in the course of the prosecutrix' cross-examination at the trial. Thus he refers to her doubtful statement made to police officers on two different occastions shortly following the attack: (1) in the early morning of March 29th when the appellant, found wandering in the neighborhood, was brought to the prosecutrix' home for identification and (2) at a later interview that same day— that she was not sure the appellant was her assailant. But her purported uncertainty at those times was not unqualified as appears from her full testimony on the subject: "Q. And you told the officers at that time, in the presence of this defendant, who is now present in court, that you couldn't identify him as the man, that you were not sure? A. I again made the same statement I have made about three times, that I identified him on certain points. Q. Well, didn't you tell the officers on the following day, March 29th, in the presence of the defendant, that you were not sure that he was the man? A. I told them that I didn't know if I could identify him from a large group of Negroes, other men, Negro men." Thus it appears that the prosecutrix, *sure* of certain characteristics of the appellant which she was able to detail to the police officers, was only expressing a cautious concern as to her ability to "distinguish him from other men who might look something like him."

Moreover the witness Garrett positively identified the appellant at the trial, and it appears that he was in an exceptionally good position to do so. Garrett testified that a few minutes after he alighted from a streetcar a short distance from the designated place of attack, he heard a woman scream and then saw the appellant running down the street; that he gave chase and they met at the lighted intersection; that he took a "swing" at the appellant but only grazed the latter's shoulder; that the street light permitted him to see clearly the appellant's features and certain peculiarities of his clothing. It further appears from the record that as the result of these circumstances, when the appellant was arrested and brought to Garrett's home in the early morning of March 29th, Garrett was able without hesitation to recognize the appellant —"pon the basis of face, bearing and style of dress—as the person he had encountered a short time previously on the street in question. Nor was Garrett's account shaken in cross-examination on any substantial points.

In short, the claimed inconsistencies in the testimony of the prosecutrix and the witness Garrett are of such a trivial nature that they are ineffective to weaken the positive character of their statements as above outlined. As stated in *People* v. *Farrington,* 213 Cal. 459, 463 [2 P.2d 814] : ''The strength or weakness of the identification, the incompatibility of and discrepancies in the testimony, if there were any, and the uncertainties of witnesses in giving their testimony were matters solely for the observation and consideration of the jurors in the first instance, and for the consideration of the trial court on motion for a new trial. It has approved the finding of the jury, and on appeal this court may not disturb such finding and the action of the trial court unless we can say, as a matter of law, that there was no evidence to support the conviction. (*People* v. *Erno,* 195 Cal. 272, 283 [232 P. 710].) On the record before us, we cannot say that this is such a case.'' See, also, *People* v. *Harsch,* 44 Cal.App.2d 572, 575 [112 P.2d 654] ; *People* v. *Knight,* 44 Cal.App.2d 887, 891 [113 P.2d 226] ; *People* v. *Holquin,* 48 Cal.App.2d 551, 555 [120 P.2d 71].)

 While the appellant denied that he was the offender and two witnesses at the trial testified in support of his alibi claim that at the time of the assault upon the prosecutrix he was just leaving a used car lot in another distant section of Los Angeles where he was employed as an attendant, this line of testimony merely operated to produce a conflict in the evidence on the point of the appellant's presence at the scene of the attack, and it was for the jury to resolve. (*People* v. *Spillard,* 15 Cal.App.2d 649, 652-653 [59 P.2d 887].) The trial court properly instructed the jury on the issue of alibi for determining whether such claim, when ''considered with all the other evidence, [was] sufficient to raise a reasonable doubt as to the guilt of the defendant'' and so ''justify an acquittal.'' (8 Cal.Jur. § 382, p. 336; *People* v. *Foster,* 198 Cal. 112, 127-128 [243 P. 667] ; *People* v. *McNeese,* 40 Cal. App.2d 97, 101 [104 P.2d 370].) Other matters presented to the jury as bearing upon this feature of the case were the following: (1) the appellant's arrest in the neighborhood some thirty minutes after the attack and at that time his possession of a knife, which the prosecutrix identified at the trial as like the one she had observed in the hand of her assailant; (2) shortly after the appellant's apprehension, the

police officers' discovery of his car parked across the street from the place of the assault, its brake bands and radiator still warm; and (3) the police officers' immediate search of the appellant's car and their finding concealed in the interior thereof a knife sheath which fitted the knife that the appellant was then carrying on his person. In this condition of the record there was ample evidence before the jury to sustain the identification of the appellant as the person who committed the assault upon the prosecutrix.

With this phase of the case the appellant correlates his second ground for reversal of the judgment—errors of law committed by the court with reference to the admission and rejection of testimony during the trial. In this regard he complains first of the trial court permitting prosecution witnesses, over objection, to testify upon the matter of visibility at the time and place of the alleged assault. But such statements were competent to go before the jury for consideration under recognized rules of evidence. In each instance a proper foundation was laid establishing the particular witness' knowledge of the "condition of light" in relation to the agreed factual setting and the relevancy of such direct observation on the issue of visibility as affecting the matter of the appellant's identification. (10 Cal.Jur. § 238, p. 980, and cases there cited.) Nor with reference to this same subject did the trial court err, after the appellant's expert witness from the Weather Bureau had testified from his official records as to the moon and weather conditions on the pertinent evening, in sustaining objection to his giving his *opinion* as to the degree of light or darkness prevailing at the particular time in question. The scientific data within the peculiar knowledge of said witness had been introduced in evidence and in relation thereto the jury was qualified to determine the *ultimate fact* of whether or not it was sufficiently light or dark that night to permit the appellant's identification under the circumstances of the alleged attack. (10 Cal. Jur. § 218, p. 959.) Moreover, apart from the records of the Weather Bureau and bearing upon the materiality of said expert's opinion as to visibility under *natural* lighting conditions at the place of the alleged crime was the added factor of the presence of a street light at the nearby intersection which, according to the prosecutrix' testimony as previously noted, shone upon the assailant as he fled from the scene. Thus the ultimate fact of the prevailing lighting

condition was correlated with an *artificial* element as to which said appellant's expert witness was, of course, in nowise qualified to testify. In this state of the record the issue of the appellant's identification was properly submitted to the jury for its determination.

 The appellant next claims that certain testimony by his wife was erroneously excluded from evidence by the trial court. The record shows the following matters in connection with this objection: The appellant's wife was called as a witness in his behalf and to offset the effect of the following statements made at the trial: (1) the account of two police officers that shortly after the alleged assault on the night in question they found the appellant on the street "out of breath [with] a knife clutched in his right hand, with the blade up his sleeve"; and (2) the prosecutrix' identification of the knife in evidence as like the one used by her assailant. Upon direct examination the appellant's wife stated that she had never before seen said knife, and that her husband did not carry or own one. To discredit this testimony the appellant's wife was interrogated on cross-examination as to inconsistent and contradictory statements made by her to a police officer when she went to see her husband at the Detective Bureau on the day following the alleged assault. Thus, after the proper foundation was laid as to the time and place in question (Code Civ. Proc., § 2052; *People* v. *Greenwell,* 20 Cal. App.2d 266, 267 [66 P.2d 674]), she was asked if she had not stated on said prior occasion that she believed her husband had "at home what was known as a hunting knife," and that "somebody gave it to him." She denied having made these remarks. Thereupon the police officer was called in rebuttal, the impeaching testimony was read to him, and he attested to the prior inconsistent statements having been made to him. As was said in *People* v. *Brazil,* 53 Cal.App.2d 596, 599 [128 P.2d 204]: "The law is established in this jurisdiction that a witness may be impeached by evidence that he has made at another time inconsistent and contradictory statements regarding a material issue, which statements are in conflict with his testimony at the trial. (*People* v. *Crow,* 48 Cal.App.2d 666, 671 [120 P.2d 686].)"

 The appellant then sought in surrebuttal to introduce in evidence the *entire* conversation had by his wife with the

police officer at the time and place in question, but, upon objection, such additional testimony was excluded by the trial court. This ruling was proper under the circumstances. The issue was whether the appellant's wife had or had not made the contrary statement in her interview with the police officer, and his rebuttal testimony was introduced not to establish the truth of the fact asserted—the appellant's ownership of the knife—but solely for the purpose of showing the contradictory account given by the appellant's wife on the previous occasion out of court. Disclosure of the *entire* conversation was not shown to have any bearing on this limited point of challenge of the witness' credibility. In such situation involving no question of clarification of the direct matter in issue, the appellant unavailingly cites section 1854 of the Code of Civil Procedure. "The rule that where part of a conversation has been shown in testimony the remainder of that conversation may be brought out by the opposing party . . ., is necessarily subject to the qualification that the court may exclude those portions of the conversation not relevant to the items thereof which have been introduced." (*People* v. *Kiser*, 24 Cal.App. 540, 546 [141 P. 1078] ; see, also, *People* v. *McHugh*, 62 Cal.App. 17, 19 [216 P. 76].)

The third point urged by the appellant as ground for reversal concerns the instructions to the jury upon submission of the case for decision. The trial court refused to instruct to the effect, as requested by the appellant, that a defendant charged with the crime of assault with a deadly weapon may be convicted of simple assault; nor did the court submit to the jury a form of verdict whereby it might have found the appellant guilty of the lesser included offense. The appellant relies on section 1159 of the Penal Code, which provides as follows: "The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense." The record does not sustain the appellant's specification of error.

The law is well settled in this state that the trial court may properly refuse to instruct upon simple assault where the evidence is such as to make it clear that if the defendant is guilty at all, he is guilty of the higher offense. (*People* v. *Lopez*, 135 Cal. 23, 24-25 [66 P. 965] ; *People* v. *Rogers*, 163 Cal. 476, 482-483 [126 P. 143] ; *People* v. *Albori*,

97 Cal.App. 537, 540-541 [275 P. 1017]; *People* v. *Thomas,* 100 Cal.App. 82, 84-85 [279 P. 826]; *People* v. *Galloway,* 104 Cal.App. 422, 429-430 [286 P. 476]; *People* v. *Lain,* 57 Cal. App.2d 123, 134-135 [134. P.2d 284].) ▊ In a criminal case instructions are always to be given or refused with reference to the facts introduced before the jury. The evidence of the prosecution disclosed that the appellant flourishing a knife made an assault upon the prosecutrix; that from the inception of the attack he used said instrument—first thrusting it toward her face as he accosted her on the street and knocked her to the pavement by the impact of his body against her; and then holding it within a few inches of her face as she lay prone on the sidewalk and threatening to use it on her if she made an outcry. In other words, it is apparent that the gist of the prosecutrix' recital of the assault was her assailant's employment of a *knife* to enforce his attack, one continuous transaction which could not be divorced from the accompanying instrument. The appellant merely denied that he was the perpetrator of the crime and attempted to establish an alibi as to his whereabouts at the time and place in question, but the *mode* of the attack upon the prosecutrix was in nowise contested at the trial. As above noted, the jury upon substantial evidence resolved adversely to the appellant's claim the issue of his identity as the offender.

▊ In assault with a deadly weapon, the character of the particular agency employed is the substance of the offense. While a knife is not an inherently dangerous or deadly instrument as a matter of law, it may assume such characteristics, depending upon the manner in which it was used, and there arises a mixed question of law and fact which the jury must determine under proper instructions from the trial court. (3 Cal.Jur. § 21, pp. 205-206; *People* v. *Valliere,* 123 Cal. 576 579 [56 P. 433]; *People* v. *Cook,* 15 Cal.2d 507, 516-517 [102 P.2d 752]; *People* v. *Petters,* 29 Cal.App.2d 48, 50-51 [84 P.2d 54].) Pertinent in this connection is the case of *People* v. *Raleigh,* 128 Cal.App. 105, 108-110 [16 P.2d 752], where the court pointed out the distinction between instrumentalities which are "weapons" in the strict sense of the word, such as guns, dirks, etc., and those instrumentalities which are not weapons in that sense, such as ordinary razors, pocket-knives or other sharp objects. With reference to the latter classification the court said: "When it appears . . . that [such] an

instrumentality . . . is capable of being used in a 'dangerous or deadly' manner, and it *may be fairly inferred from the evidence that its possessor intended on a particular occasion to use it as a weapon should the circumstances require, we believe that its character as a 'dangerous or deadly weapon' may be thus established, at least for the purposes of that occasion.*" (Italics ours.)

The trial court properly instructed the jury defining a deadly weapon (Pen. Code, § 245) and an assault in relation thereto (Pen. Code, § 240). In its charge on this phase of the case, the court stated that "the intent or intention with which an act is done is manifest by the circumstances connected with the offense," and it correlated therewith the "present ability to commit a violent injury upon the person of another" as a matter for consideration in establishing the character of the instrumentality for the occasion in question. These were essential points for the jury's deliberation of the appellant's guilt of an assault with a deadly weapon. (*People* v. *Raleigh, supra,* at pages 109-110.) To warrant conviction of such offense it was not necessary that the prosecution introduce evidence to show that the appellant *actually made an attempt to strike or use the knife upon the person of the prosecutrix* (*People* v. *Bird,* 60 Cal. 7; *People* v. *Hunter,* 71 Cal.App. 315 [235 P. 67]), and the court properly refused the appellant's request to so instruct the jury. Thus, in the Bird case evidence tending to prove that the defendant "rushed" toward the prosecuting witness with a loaded pistol and that he gestured "menacingly" was deemed sufficient to establish his commission of an assault with a deadly weapon. In commenting upon the charge to the jury in relation to the facts in the case, the court observed at pages 8-9: "It is said that the Court below erred in giving the instruction following: 'If the person having the present ability to commit a violent injury upon the person of another, and having with him a deadly weapon, rushes toward such other person with menacing gestures and with a purpose to use such weapon, an assault is committed, though such person is prevented from striking or using the weapon before he comes near enough to do so.' . . . his 'purpose' or intent was left by the instruction to the jury. . . . The instruction, while expressed in general terms, is not abstract, but is to be construed with reference to the phase of the actual evidence which the jury might adopt.''

And in the Hunter case the defendant's conviction of an assault with a deadly weapon was affirmed though the evidence did not show that he attempted to use the loaded gun. Upon this point the court said at page 319: "The evidence is ample to show that the defendant had the intention and the present ability to kill his wife. The only question remaining is whether he attempted to carry his purpose into execution. To accomplish that purpose, it was necessary for him to take the gun from his sock, to point it at his wife, and to pull the trigger. *Any one of these would constitute an overt act toward the immediate accomplishment of the intended crime.* He was endeavoring to take the gun from his sock when his wife thwarted the attempt to kill her by jumping out of the window. Naturally she did not wait to see whether he succeeded in getting hold of the gun or whether he pointed it at her, and it is immaterial whether he did either. The actual transaction had commenced which would have ended in murder if it had not been interrupted." (Italics ours.)

 Whether the instrument employed be inherently "dangerous or deadly" as a matter of law or one that may assume such character depending upon the attendant circumstances, the principle as to the *intent* which may be implied from the manner of the defendant's use of the instrumentality involved would apply in either instance. (*People* v. *Cook, supra,* 15 Cal.2d 507, 516-517 [102 P.2d 752]; *People* v. *Russell,* 59 Cal.App.2d 660, 665 [139 P.2d 661].) The distinction in the classification of weapons to establish commission of the offense within the meaning of section 245 of the Penal Code merely relates to the sufficiency of the evidence to support the charge. (*People* v. *Petters, supra,* 29 Cal.App.2d 48, 50 [84 P.2d 54].) Thus, pertinent on this aspect of the case as disclosed by the record were the following considerations presented to the jury by the prosecution to sustain the appellant's conviction: his employment of a knife from the inception of his encounter with the prosecutrix; his *threatening language* to enforce her submission—"Don't make any noise or I'll use this knife"; his ability to have then executed his purpose and the frustration of the attack only as the result of the prosecutrix managing to free herself from his grasp so as to scream for help and kick him in the groin, causing him to run down the street. The fact that the appellant was thus thwarted in the act in question and did not

inflict serious injury upon the prosecutrix did not render his conduct any the less criminal. As was said in *People* v. *Bumbaugh,* 48 Cal.App.2d 791, 796 [120 P.2d 703]: "To constitute the crime of assault within the meaning of section 245 of the Penal Code . . . it is not required . . . that the injuries inflicted be of a serious nature. The word 'violent' as used in section 240 of the Penal Code defining an assault, has been held not to be synonymous with 'bodily harm,' but to include any wrongful act committed by means of physical force against the person of another. (*People* v. *Bradbury,* 151 Cal. 675, 676 [91 P. 497].) In the case just mentioned it is said: 'The term "violence" as used here is synonymous with "physical force," and in relation to assaults the two terms are used interchangeably. [citing authorities.] Mr. Bishop says (2 Crim. Law, §§ 32-34): "The kind of physical force is immaterial. . . ."'"

The evidentiary factors here involved render distinguishable the case of *People* v. *Dodel,* 77 Cal. 293 [19 P. 484], cited by the appellant. There too the defendant was convicted of the crime of an assault with a deadly weapon. The evidence showed that no attempt to use the instrument was made, that "after the knife was drawn defendant was *not at any time near enough to* [the complaining witness] *to strike* him with it, and that he *moved away from* [the complaining witness], and *not toward him.*" (Italics ours.) In that condition of the record, demonstrating that the defendant *lacked ability to consummate the assault at the time in question,* it was held erroneous for the trial court to refuse the proposed instruction that "where . . . the assault is charged to have been committed with a deadly weapon, there must have been an attempt to strike with or to use the deadly weapon." But the present case is in marked contrast where, according to the accredited evidence, the appellant, while holding a knife a few inches above the prosecutrix' face, stood in a bent position over her as she lay on the pavement; only her act of screaming and kicking him in the groin apparently prevented his carrying out his threat and caused him to run from the scene of the assault. ▮ Such circumstances certainly would justify the conclusion that at the time of his attack upon the prosecutrix the appellant had the *ability to commit a violent injury with the knife upon her person.* Proof of an attempt to strike or use the knife was then not necessary to make out the al-

leged offense; the appellant's intent as evidenced by his actions was for the jury to decide. (*People* v. *Bird, supra; People* v. *Hunter, supra.*)

A situation involving considerations of "striking distance" closely analogous to those here presented to the jury is the case of *People* v. *Rader,* 24 Cal.App. 477 [141 P. 958]. There the defendant was convicted of an assault with a deadly weapon upon the person of his wife. In reviewing the record the court said at pages 480-481: "The evidence introduced on behalf of the people was that furnished chiefly by three witnesses, one being the wife of appellant and the other two her father and sister. This testimony showed that appellant, on the night of the 11th of October, 1913, engaged in a wordy controversy with his wife, the subject being the matter of her persisting in attending a certain church, to which he objected; that finally he became enraged and drew a pocket knife, at the same time seizing her about the head and stating that he was going to kill her. At that moment the sister interfered and the father entered the room at about the same time; whereupon appellant desisted in his attack and dropped the knife back into his pocket. . . . It is contended that the evidence was insufficient to warrant the conviction of appellant. This claim may be answered briefly: The statement of the general substance of the evidence introduced on behalf of the prosecution, as hereinbefore set forth, shows that there was ample evidence upon which to find the verdict returned by the jury." And at page 484 the court significantly remarked: "*It was not necessary in order to establish the commission of the crime that appellant should have actually cut his intended victim with the knife which he exhibited. (People* v. *Piercy,* 16 Cal.App. 13 [116 P. 322], and cases therein cited.)" (Italics ours.)

The fact that here the knife was exhibited in connection with a *qualified threat* would not preclude the appellant's conviction as charged. The relevant principles on this point were considered at some length in the early case of *People* v. *McMakin,* 8 Cal. 547, where the assault consisted of drawing a revolver and holding it in such a position that it could be readily used, though if discharged in the position in which it was held the bullet would strike the ground before reaching the person assaulted. In sustaining the conviction of assault with a deadly weapon, with intent to inflict a bodily injury,

the court said at pages 548-549: ''The ability to commit the offence was clear. Holding up a fist in a menacing manner, drawing a sword, or bayonet, presenting a gun at a person who is within its range, have been held to constitute an assault. *So, any other similar act, accompanied by such circumstances as denote an intention existing at the time, coupled with a present ability of using actual violence against the person of another, will be considered an assault.* . . . But can the offence be committed when the intention is but *conditional?* . . . If the prisoner did not intend to use the pistol at all, except for the sole purpose of intimidation, then, it is apprehended, the offence would not have been complete. *But when the intent is to go further, if necessary, to accomplish the purpose intended, and preparations are actually made, and weapons drawn, and placed in a position to be instantly used offensively, and with effect, against another, and not in self-defence, it would seem to be clear that the offence would be complete.* . . . The prisoner put himself in a position to use the weapon in an instant, having only to elevate the pistol and fire, at the same time declaring his intention to do so, unless the prosecutor would leave the ground. *It is true, the threat was conditional, but the condition was present, and not future, and the compliance demanded was immediate. Where a party puts in a condition which must be at once performed, and which condition he has no right to impose, and his intent is immediately to enforce performance by violence, and he places himself in a position to do so, and proceeds as far as it is then necessary for him to go in order to carry out his intention, then it is as much an assault as if he actually struck, or shot, at the other party, and missed him.* It would, indeed, be a great defect in the law, if individuals could be held guiltless under such circumstances. The drawing of a weapon is generally evidence of an intention to use it. Though . . . that evidence may be rebutted . . . when the party draws the weapon, although he does not *directly* point it at the other, but holds it in such a position as enables him to use it before the other party could defend himself, at the same time declaring his determination to use it against the other, the jury are fully warranted in finding that such was his intention.'' (Italics ours.)

In the light of the foregoing discussion, the conclusion is inescapable that under the evidence as above detailed

194

the appellant was either guilty of an offense more serious than a simple assault, or he was not guilty, and such was the position of the prosecution throughout the trial. Accordingly, the appellant's request for an instruction that the jury might find him guilty of the lesser included offense was properly refused, for such charge would have been wholly inimical to the facts and the law with reference thereto. There was no room for a compromise verdict. In such case it is no violation of the constitutional prohibition against charging the jury with respect to matters of fact for the trial court to assume that the offense is not a lesser included one. (*People* v. *Welch,* 49 Cal. 174, 181; *People* v. *Watts,* 198 Cal. 776, 794-796 [247 P. 884] ; *People* v. *Albori,* 97 Cal.App. 537, 541 [275 P. 1017].) It was said in *People* v. *McNutt,* 93 Cal. 658, 659 [29 P. 243], referring to *People* v. *Madden,* 76 Cal. 521 [18 P. 402], and other cases, that ''These decisions of the court are not in conflict with section 1159 of the Penal Code; for that section contemplates the conviction of a defendant for the lesser offense, *when the evidence is insufficient to justify a conviction for the greater offense charged.''* (Italics ours.)

The authorities cited by the appellant as holding it reversible error for the trial court to refuse to give an instruction authorizing a conviction of a lesser included offense are readily distinguishable upon the factual considerations involved. (*People* v. *Demasters* [assault with *intent to commit mayhem*], 105 Cal. 669 [39 P. 35] ; *People* v. *Mock Ming Fat* [assault with *intent to commit murder*], 82 Cal.App. 618 [256 P. 270] ; *People* v. *Foss* [assault with *intent to commit robbery*], 85 Cal.App. 269 [259 P. 123] ; *People* v. *Cicerelli* [assault with *intent to commit rape*], 123 Cal.App. 48 [10 P.2d 792].) In each of these cases the *evidence as to the specific intent* charged against the defendant in connection with the assault *was insufficient to sustain conviction of the higher offense,* and accordingly in each instance the refusal of the trial court to give the proposed instruction covering lesser offenses was improper. ▉ But contrary to those situations, *specific intent* is not an element of the crime of assault with a deadly weapon (*People* v. *Lim Dum Dong,* 26 Cal.App.2d 135, 140 [78 P.2d 1026], and so where the evidence is sufficient to establish the character of the instrument as charged, it is not necessary for the prosecution to prove specifically that the defendant intended to injure the complaining witness. Such intent may then be implied from the doing of the unlwaful

act. (3 Cal.Jur. § 14, pp. 196-197; *People* v. *Bumbaugh, supra,* 48 Cal.App.2d 796.) As above recited, the facts here in evidence fully justified the trial court's instruction confining the possible verdicts to guilt of the higher offense or acquittal, and accordingly the charge to the jury is not open to attack on the record.

 The appellant's final argument concerns the claim of misconduct on the part of the deputy district attorney and the trial judge which operated to deprive him of a fair and impartial trial by discrediting his counsel before the jury. The record does not support the appellant's position on this point. The asserted impropriety is said to have been committed (1) by the deputy district attorney when he, during his closing argument to the jury in answer to the summary of the case just made by the appellant's counsel, accused the latter of misstating and improperly commenting upon the evidence "in violation of his oath" as a lawyer; and (2) by the court when it denied the assignment of misconduct as made with respect to *all* of such remarks. But there is no basis for assuming an injury accrued thereby to the appellant. The court sustained the appellant's counsel as to that part of his objection relating to an attack on his personal integrity and removed the sting contained therein, for it promptly admonished the jury to disregard the reference to the "sanctity of the attorney's oath." The remainder of the deputy district attorney's remarks as to defense counsel's improper citation of the record to show what was and was not evidence in the case apparently was regarded by the trial court as no more than the direct and natural result of a heated exchange of views in the course of a forensic struggle, and accordingly it refused to cite them as misconduct. However, in so ruling, the court expressly stated "the jury has been following the proceedings and knows [the record]"; and in addition, it gave a general instruction to the effect that all statements of counsel, if they were not supported by evidence, should be wholly disregarded by the jury. These circumstances clearly demonstrate that the appellant's right to a fair determination of his case by the jury upon the facts involved was fully protected by the trial court, and that his claim of prejudice suffered under the contested ruling on the asserted misconduct is wholly without merit. (*People* v. *Mayes,* 113 Cal. 618, 622-623 [45 P. 860]; *People* v. *Hodges,* 116 Cal.App. 61, 76 [2 P.2d 174]; *People* v. *Knight,* 44 Cal.App.2d 887, 895 [113 P.2d 226].)

From a careful survey of the entire record, it is apparent that the evidence is amply sufficient to justify the verdict, and no prejudicial errors appearing, the judgment and order denying the motion for a new trial are affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.