Filed 9/15/16  P. v. Mullins CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSEPH W. MULLINS,<br><br>    Defendant and Appellant. | D068555<br><br><br>(Super. Ct. No. SCE348187) |

APPEAL from a judgment of the Superior Court of San Diego County, Lantz Lewis, Judge.  Affirmed.

Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

Joseph Mullins held a knife in his hand while threatening a security guard at a shopping center.  He was convicted by a jury of one count of assault with a deadly

weapon.  (Pen. Code,[1] § 245, subd. (a)(1).)  The jury found true a related allegation of personal use of a dangerous or deadly weapon.  (§ 1192.7, subd. (c)(23).)  The trial court stayed execution of a two-year prison term and placed Mullins on felony probation for four years, conditioned on serving 364 days in local custody.

Mullins appeals, first contending the trial court erred in denying his motion for acquittal based on alleged insufficiency of the evidence to support the assault conviction.  (§ 1118.1.)  During the incident, Mullins was showing the guard (the victim) his unfolded pocket knife, but he remained six to eight feet away from her and eventually turned away.  He contends the evidence did not sufficiently show he intended to or did advance close enough to the victim to be able to stab her.  (*People v. Williams* (2001) 26 Cal.4th 779, 786 (*Williams*) ["An assault occurs whenever ' "[t]he next movement would, *at least to all appearance*, complete the battery." ' "].)  Further, he contends the type of knife he was holding was not inherently dangerous as a matter of law, within the meaning of section 245, subdivision (a)(1).  (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1029-1030 (*Aguilar*) [assault can be committed either with a legally-defined "inherently deadly" weapon (such as a dagger), or with another type of object, if used in a manner likely to produce bodily injury].)

On instructional issues, Mullins argues the trial court erred when it gave the jury the language in CALCRIM No. 875, telling it in the alternative that it could find him guilty (1) if he were found to have used an "inherently deadly" weapon, or (2) if it found

---

[1]  Statutory references are to the Penal Code unless otherwise specified.

2

he used the knife in a manner likely to produce bodily injury. Mullins argues the jury could have been confused by being given such alternative bases for conviction, if the evidence did not support each of them, and further, the trial court should have deleted the "inherently deadly" language from the pattern instruction.

Mullins next contends the trial court erred by refusing to instruct the jury about consideration of a lesser included offense, simple assault. (§ 240.) He then claims the trial court abused its discretion in denying his motion to reduce his felony conviction to a misdemeanor. (§ 17, subd. (b)(3); *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977 (*Alvarez*) [exercise of discretion standard].)

We conclude the trial court appropriately denied the motion for acquittal. Sufficient evidence in the record supports its determination there was conflicting evidence to be resolved by the jury on the relevant points, in particular, on whether Mullins used the knife in a manner that was likely to produce bodily injury. Further, even if we assume there was no forfeiture of any alleged error when Mullins did not request any modification of CALCRIM No. 875, the use of the standard language in that instruction (as edited in other respects) was not erroneous. The jury was appropriately allowed to decide in the alternative whether the elements of assault with a deadly weapon had been proven, including the manner of his use of the knife.

We also determine that the evidence did not support an instruction on simple assault, because it was not disputed that the charged behavior involved Mullins's use of the knife, and the only conflicts in the evidence addressed the manner in which he used it.

Finally, the record does not support any conclusion that the trial court abused its discretion in declining to reduce the degree of the offense. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

At the time of the incident, Mullins was a homeless 20-year-old man who had been in the habit of visiting Parkway Plaza shopping center for several months. He was familiar with security officers at the mall, including Officer Christine Ayala, who had seen him there daily for some time and had often asked him to leave the area, as part of her routine enforcement of mall policy and regulations.

On February 19, 2015, around 3:00 p.m., Mullins was sitting at a table and sleeping outside the food court. Ayala woke him up and told him he had to leave, as he was not in compliance with mall policy. In response, Mullins argued he was waiting for a ride and he wanted to speak to her supervisor. He started cursing and walking away, until he sat down on a curb. Ayala contacted her supervisor, Officer Erik Beltran, for assistance, and picked him up in her golf cart. They drove to the curb where Mullins was sitting and Beltran asked him to leave. Mullins kept cursing and telling Ayala to leave him alone, saying he was tired of hearing the same arguments from her. She thought he seemed to be acting different from before and asked him what was the matter, and he told her he was mad.

After the two guards talked to Mullins for about 10 minutes, asking him to leave, he got angrier and told Ayala, "I am just going to stab you. You are being a pain in the -- I am tired of it." As he was standing up from the curb, he pulled a folding or flip knife

4

out of his pocket, opened it, and took a few steps toward Ayala, who was about 10 feet away.  Beltran was standing next to her and as he intervened, she moved backwards.

As Mullins stepped toward Ayala, she saw him looking at her, holding the knife in front of him and swinging it from side to side a few inches in front of his body.  He was not yelling or lunging at her, but walking toward her.  She couldn't see the handle of the knife, since he was holding it, but when she saw the blade, it looked about five to six inches long.  He came to within seven feet (between six to eight feet) of where she was standing.  Ayala felt scared because she thought he could hurt her with the knife.

Beltran testified that Mullins approached to within four or five feet from where Beltran and Ayala were standing.  Beltran called a supervisor because he thought that Mullins was getting close enough so that he could have used the knife against him or Ayala.  Beltran could see Mullins was pointing the blade down, and that the whole knife was bigger than a hand, about five to six inches long.  Mullins stayed relatively calm throughout the incident.  As Ayala was moving back, Mullins turned around, starting to walk away, holding the knife in his hand.

About five minutes later, police officers arrived and contacted Mullins, who was crying and upset.  First, he told them he had thrown his Gerber knife up on the roof of a nearby building, and then, that he threw it somewhere.  They found a folding Gerber knife nearby in a corner of the mall.  Its blade was two-and-a-half inches long.

Mullins was charged with assault with a deadly weapon.  A count of criminal threat was dismissed.

DISCUSSION

I

*APPLICABLE PRINCIPLES ON ASSAULT WITH A DEADLY WEAPON*

Assault is generally defined as an unlawful attempt, coupled with a present ability, to commit a violent injury on another. (§ 240.) Its elements include an intentional act and "actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*Williams*, *supra*, 26 Cal.4th 779, 790.) Under section 245, subdivision (a)(1), this type of assault can be committed either with a legally-defined "inherently deadly" weapon, or with an object that is "not deadly per se, [but] may be used, under certain circumstances, in a manner likely to produce death or great bodily injury." (*Aguilar*, *supra*, 16 Cal.4th 1023, 1029.)

In evaluating whether a defendant in an assault had the present ability to inflict injury, the courts consider the nature of the act committed, to evaluate how far along it was on a continuum of conduct that could culminate in an actual battery. (§ 240; *People v. Chance* (2008) 44 Cal.4th 1164, 1172 (*Chance*).) Accordingly, "assault is not limited to acts done at the last instant before a completed battery." (*Id.* at p. 1175.) "[W]hen a defendant equips and positions himself to carry out a battery, he has the 'present ability' required by section 240 if he is capable of inflicting injury on the given occasion, even if some steps remain to be taken, and even if the victim or the surrounding circumstances thwart the infliction of injury." (*Chance*, *supra*, 44 Cal.4th 1164, 1172.)

6

Moreover, "[o]ne may commit an assault without making actual physical contact with the person of the victim; because the statute focuses on *use* of a deadly weapon or instrument or, alternatively, on force *likely* to produce great bodily injury, whether the victim in fact suffers any harm is immaterial." (*Aguilar*, *supra*, 16 Cal.4th 1023, 1028; original italics.)

Some types of knives, such as dirks and daggers, meet the statutory definition of inherently deadly weapons. (*Aguilar*, *supra*, 16 Cal.4th 1023, 1029-1030.) Mullins was charged with acts involving his handling and use of a folding knife. He categorically argues the record does not demonstrate that this was an inherently dangerous type of knife, although he seems to concede that the knife had a five to six inch blade. (See *People v. McCoy* (1944) 25 Cal.2d 177, 188 (*McCoy)* [not every knife is "an inherently dangerous or deadly instrument as a matter of law"; e.g., a pocket-knife is not].) In response, the People argue that a knife of that size is inherently dangerous. The parties do not point to any express ruling by the trial court on this issue, and the record is somewhat unclear on the description of the knife Mullins used. Ayala said the blade was five to six inches long, and Beltran said the knife was five to six inches long when unfolded. The Gerber knife that was found in the shopping center had a blade that was two and one-half inches long.

For purposes of resolving the issues on appeal, it is unnecessary for this court to place a definitive label on the knife as inherently deadly or not. We discuss the characterization of the knife only to the extent it is relevant to Mullins' specific claims of error in the denial of the motion for acquittal, or in the instructions given.

## II

### *MOTION FOR ACQUITTAL UNDER SECTION 1118.1*

#### A.  Background

At the close of the prosecution's case-in-chief, defense counsel brought a motion under section 1118.1 for judgment of acquittal.  Counsel argued that no sufficient evidence would support a conviction, because the testimony did not show that Mullins, while holding the knife, came close enough to Ayala to use it "in a manner likely to produce death or great bodily injury."  (*Aguilar, supra*, 16 Cal.4th at p. 1029.)  Rather, there was conflicting testimony about whether Mullins had actually pointed the knife at Ayala while moving, or whether he was pointing the knife down while standing away from her.

The trial court found that since the witnesses had presented two somewhat different accounts of the incident, there was sufficient evidence to require the jury to decide whether the next thing that was going to happen, based on Mullins's conduct, would be a battery.  It was unclear which version the jury was going to believe on how forcefully the knife was being used.  The motion for judgment of acquittal was denied.

#### B.  Appellate Standards

We review the denial of a motion for acquittal pursuant to section 1118.1 under the substantial evidence standard.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1213.)  This standard requires consideration of the record in the light most favorable to the judgment, to determine whether it discloses evidence that is reasonable, credible, and of solid value,

such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Story* (2009) 45 Cal.4th 1282, 1296.)

" 'The standard applied by a trial court in ruling upon a motion for judgment of acquittal pursuant to section 1118.1 is the same as the standard applied by an appellate court in reviewing the sufficiency of the evidence to support a conviction, that is, "whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged." ' [Citation.] 'The purpose of a motion under section 1118.1 is to weed out as soon as possible those few instances in which the prosecution fails to make even a prima facie case.' [Citations.] The question 'is simply whether the prosecution has presented sufficient evidence to present the matter to the jury for its determination.' [Citation.] The sufficiency of the evidence is tested at the point the motion is made. [Citations.] The question is one of law, subject to independent review." (*People v. Stevens* (2007) 41 Cal.4th 182, 200.)

### C. Arguments and Analysis

Mullins argues the facts presented by the prosecution did not support a finding that he used the knife in a manner likely to produce great bodily injury. He contends the evidence was deficient on (1) his intent, (2) whether his actions could have resulted in a battery, and (3) whether the knife was used with sufficient force to qualify as a "deadly weapon" under the definition in section 245, subdivision (a)(1) (even if not inherently dangerous). He points out he did not lunge or shout at the two security guards, who thought he seemed relatively calm throughout the incident. He approached Ayala from

9

10 feet away, taking a few steps toward her but then turning away. He distinguishes his situation from case authority in which a defendant was convicted for chasing and threatening multiple victims, or in which a victim was being pursued but escaped injury only by taking evasive action. (E.g., *People v. Tran* (1996) 47 Cal.App.4th 253, 261-262 [dangerous character of conduct is deemed to contemplate injury]; *People v. Hunter* (1925) 71 Cal.App. 315, 317-318 [conviction supported where defendant reached for gun while victim escaped].)

As of the time the motion was brought, the issue was whether the evidence objectively showed Mullins demonstrated an assaultive act. The prosecutor did not have to prove he had a specific intent to injure. (*Williams, supra*, 26 Cal.4th at p. 786.) The proper focus was on the nature of the act, not the specific intent of the defendant, considering the continuum of conduct from assault up to battery. (*Chance*, *supra*, 44 Cal.4th 1164, 1170.) Both temporal and spatial considerations are relevant to the proof of whether an assault defendant had the present ability to commit a violent injury on another with a weapon. (*Id.* at p. 1171.) "[T]he trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue." (*Aguilar, supra*, 16 Cal.4th at p. 1029.)

The evidence about the incident, at least up until the time Mullins turned and walked away, supported a finding that he had a "present ability" to use the weapon to commit injury as defined in the statute. (*Chance*, *supra*, 44 Cal.4th 1164, 1167.) During their preliminary exchange, he told Ayala he was mad, and he did not seem to be acting in the way that he usually did toward her. After saying he was going to stab her, he stood

10

up and took his knife out of his pocket to unfold it. She saw him looking at her and swinging the open knife in front of him, with the blade pointed at her, as he stepped forward to a spot within six to eight feet of her. Beltran thought Mullins came within four to five feet of the guards, but described Mullins as holding the knife in his fist at his side, with the blade pointing down, while he swung his arm as he walked.

Both Ayala and Beltran believed Mullins could have completed a stabbing motion before he turned around. The testimony showed he was acting somewhat unpredictably and Ayala responded by moving back, while Beltran called for reinforcements. From all the evidence, it could reasonably be inferred that Mullins's actions in pulling out and opening the knife and displaying it to Ayala gave him " 'the means and location to strike immediately,' " and he had the ability to inflict force that was likely to produce great bodily injury. (*Chance*, *supra*, 44 Cal.4th 1164, 1174.) The trier of fact was properly required to decide whether the act, by its nature, would "probably and directly result in the application of physical force against another." (*Williams*, *supra*, 26 Cal.4th 779, 790.)

It does not make any difference for purposes of the ruling on the motion that Ayala and Beltran's reports about the incident were slightly different. Viewing the evidence in the light most favorable to the ruling, there was a sufficient showing at trial that the conduct Mullins demonstrated toward Ayala amounted to a use of force that was likely to produce bodily injury, based on the way he held the sharp instrument while advancing toward her in a threatening way. (*Chance*, *supra*, 44 Cal.4th 1164, 1167.) In ruling on the motion for acquittal, the trial court correctly concluded the evidence could

11

establish all elements of an assault with a deadly weapon, including the use of the knife at a range that was arguably close enough to be likely to result in great bodily injury.

III

*ARGUMENTS ON INSTRUCTIONAL ERROR*

A.  Background

During discussions of jury instructions, the court tentatively approved the prosecutor's proposed edited version of CALCRIM No. 875, on assault with a deadly weapon.  The court told defense counsel that the matter could be reopened during further discussions the next day, if any inappropriate material had been included or excluded. No further discussion on the subject or requests for clarifying instructions occurred during trial.

As given in this case, CALCRIM No. 875 on assault with a deadly weapon, other than a firearm, required the prosecution to prove the following:  "One.  The defendant did an act with a deadly weapon, other than a firearm, that by its nature would directly and probably result in the application of force to a person.  Two.  The defendant did the act willfully.  Three.  When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act[], by its nature, would directly and probably result in the application of force to someone.  And, four; when the defendant acted, he had the present ability to apply force with a deadly weapon, other than a firearm, to a person.  [¶]  Someone commits an act willfully when he or she does it willingly or on purpose.  It is not required that he or she intend to break the law, hurt someone else or gain any advantage.  [¶]  The terms 'application of force' and 'apply force' mean to touch

12

in a harmful or offensive manner. The slightest touching can be enough if [it is] done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough. The touching does not have to cause pain or injury of any kind. [¶] Touching can be done indirectly by causing the object or someone else to touch the other person. [The] People are not required to prove that the defendant actually touched someone. [¶] The People are not required to prove that the defendant actually intended to use force against someone when he acted. No one needs to actually have been injured by the defendant's act. If someone was injured, you may consider that fact, along with all of the other evidence[,] in deciding whether the defendant committed an assault. [¶] *A deadly weapon, other than a firearm, is any object, instrument or weapon that is inherently deadly or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury*." (Italics added.)

Both counsel proposed to the trial court that an instruction be given on the lesser offense of simple assault. In addressing the issue, the court identified the problem as the lack of evidence supporting any theory that an assault occurred other than with a knife, such that it would be speculation to say there was no knife involved. In response, defense counsel could not suggest how substantial evidence would have supported the giving of a simple assault instruction, and the court decided not to give one.

### B. Review Standards and Application

Whether a challenged instruction accurately conveys the legal requirements for proving a particular offense is a question of law subject to independent review. (*People v. Waidla* (2000) 22 Cal.4th 690, 733; *People v. Posey* (2004) 32 Cal.4th 193, 2l8.)

13

When examining an ambiguous or purportedly erroneous instruction under the United States Constitution or California law, we inquire "whether there is a reasonable likelihood that the jury misconstrued or misapplied the words in violation" of such laws. (*People v. Clair* (1992) 2 Cal.4th 629, 663; *People v. Young* (2005) 34 Cal.4th 1149, 1202.) In deciding the issue, we consider the specific language challenged, the whole of the instructions, argument of counsel, and the jury's findings. (*People v. Cain* (1995) 10 Cal.4th 1, 35-36; *People v. Holt* (1997) 15 Cal.4th 619, 699.)

In general, a defendant may not contend on appeal that jury instructions were overly general or incomplete, without first requesting a clarifying instruction at trial. Failure to make such a request forfeits the claim on appeal. (*People v. Hart* (1999) 20 Cal.4th 546, 622; *People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012 (*Hudson*).) However, if the jury was misinstructed on an element of the offense, reversal is required unless we are able to conclude that the error was harmless beyond a reasonable doubt. (*Id.* at p. 1013; *People v. Flood* (1998) 18 Cal.4th 470, 504.)

On appeal, Mullins has two interrelated objections to the language of CALCRIM No. 875 that he did not raise below. He contends the trial court erroneously instructed the jury that it could find him guilty not only based on the manner in which he used the knife, but alternatively, if it determined his knife was "inherently deadly." He seems to claim that only a dirk or dagger, which he did not use, would clearly qualify as an inherently deadly type of knife, such that the court should have used its own initiative to further define the "inherently deadly" term, in instructing the jury. (*McCoy*, *supra,* 25 Cal.2d at p. 188.) Since he did not request that the pattern instruction be modified in that

14

respect, he has arguably forfeited that argument. (*Hudson*, *supra*, 38 Cal.4th 1002, 1011-1012.) The same is true of his objection that the alternative language in this instruction erroneously allowed the jury to consider not only how he used the knife, but also its proper characterization. We nevertheless consider his arguments on appeal, under the theory that the overall proof of the elements of the offense were at stake. (*Id.* at p. 1013.)

## C. Analysis; CALCRIM No. 875

To the extent Mullins contends his folding knife was not proved to be inherently deadly, no instructional error occurred. Whether the unfolded knife overall was five to six inches long, or its blade alone was that length, it could potentially be used to inflict great bodily injury within the meaning of section 245, subdivision (a)(1). The evidence in this case did not rule out alternative characterizations of Mullins's conduct, that he used a per se deadly weapon or used another type of knife with such force as was likely to produce great bodily injury, at least for the purposes of this occasion. (*People v. Graham* (1969) 71 Cal.2d 303, 327-328; *Aguilar*, *supra*, 16 Cal.4th 1023, 1028.) The court was not requested or required to rule upon the proper legal characterization of the knife Mullins used, and it came under no obligation to inform the jurors that the phrase "inherently deadly" has historically been applied to some sharp instruments and not others. In this respect, the challenged instruction was a proper presentation of the statutory elements of the offense. (*Hudson*, *supra*, 38 Cal.4th 1002, 1011-1012 [instruction correct in law is not erroneous].)

Mullins next argues that based on the six to eight foot distance he maintained between Ayala and himself, he lacked "the present ability to apply force" to inflict bodily

injury with the knife, within the meaning of CALCRIM No. 875. He claims no evidence was presented about an essential element of the offense, i.e., that he actually utilized the knife in a manner likely to cause death or serious bodily injury.

For a conviction, the jury was required to find that Mullins did an act with the weapon "that by its nature would directly and probably result in the application of force to a person," and the act was done willfully. (CALCRIM No. 875.) Under section 245, subdivision (a)(1), " '[l]ikely' means 'probable' or . . . 'more probable than not.' " (*People v. Savedra* (1993) 15 Cal.App.4th 738, 744; *Aguilar, supra,* 16 Cal.4th at p. 1035.) Drawing a weapon is generally evidence of the intention to use it, even in connection with a qualified or conditional threat. (*McCoy, supra*, 25 Cal.2d 177, 193.) Where a defendant equips and positions himself to carry out a battery, he has a "present ability" to inflict injury, even if some steps remain to be taken for him to accomplish that. (*Chance, supra*, 44 Cal 4th 1164, 1172.)

"[T]he jury's decisionmaking process in an aggravated assault case under [Penal Code] section 245, subdivision (a)(1), is functionally identical regardless of whether, in the particular case, the defendant employed a weapon alleged to be deadly as used or employed force likely to produce great bodily injury; in either instance, the decision turns on the nature of the force used. . . . '[A]ll aggravated assaults are ultimately determined based on the force likely to be applied against a person.' " (*Aguilar, supra,* 16 Cal.4th at p. 1035.)

Here, Ayala testified Mullins had refused to comply with her requests to leave the mall, and during their interactions, he seemed angry. After saying he was going to stab

16

her, he got up to pull out his knife and pointed the blade at her, taking a few steps toward her and swinging the knife back and forth across his body. Beltran saw Mullins get out the knife after verbally threatening to stab Ayala. Each of them believed that Mullins could have completed a stabbing motion, based on his position in relation to them.

The jury was entitled to take into account all the circumstances surrounding Mullins's conduct in deciding if the elements of assault with a deadly weapon had been proven. In light of all the instructions given by the trial court, including but not limited to CALCRIM No. 875, it is unlikely the jury could have found he merely possessed the knife but did not use it in a show of force. Evidence was presented that his conduct could be objectively interpreted as willfully taking action with the knife in a manner that was consistent with and likely to cause bodily injury to Ayala, even though he eventually turned away from her. On that basis, the alternative format of the instruction referring to the manner of use of a weapon, as well as the type of weapon, was not legally incorrect.

D. Lesser Included Offense Arguments and Analysis

Simple assault is defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) It is a lesser included offense of assault with a deadly weapon. (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 747.) Mullins objects that the trial court erroneously refused the requests he and the prosecutor each made to give a lesser included offense instruction concerning simple assault. The trial court responded that the evidence was undisputed that the incident involved the use of a knife, and it would be speculation to say a lesser type of assault happened.

17

A trial court must, even in the absence of a request, instruct on the lesser included offenses of any charged crimes, in the interest of protecting the defendant's constitutional right to have the jury determine every material issue presented by the evidence. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1007-1008 (*Cunningham*).) A lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense such that the greater cannot be committed without also committing the lesser. (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) The purpose of instructing on lesser included offenses shown by the evidence is to avoid "forcing the jury into an 'unwarranted all-or-nothing choice' [citations] that could lead to an unwarranted conviction." (*People v. Hughes* (2002) 27 Cal.4th 287, 365.)

In other types of cases, the evidence may show that the defendant is either guilty of a greater offense or not guilty at all. (*McCoy, supra*, 25 Cal.2d 177, 193-194.) Where the facts and the law do not support the giving of an instruction on a lesser offense, the court should not give one. (*Ibid.*; *Cunningham*, *supra*, 25 Cal.4th at pp. 1007-1008.) Here, no lesser included offense was shown by the evidence. The jury was required to evaluate whether Mullins's conduct as a whole, described as using and displaying a knife while moving toward the victim, constituted an assault at all. The evidence would not have supported a conclusion that he committed the lesser offense but not the greater, and therefore the trial court was justified in refusing to instruct the jury on simple assault.

18

IV

*DENIAL OF MOTION TO REDUCE FELONY CONVICTION*

A.  Background

Mullins again contends there was only slight and insufficient evidence presented about the offense, such that the court abused its discretion in declining to reduce his felony conviction to a misdemeanor.  (§ 17, subd. (b)(3).)  In his motion seeking that order, he contended that his offense amounted to directing angry words and brandishing a knife, six to eight feet away from the victim.  He pointed out that during trial, the court expressed the opinion that it was a very close call as to whether the case was more of a brandishing situation, versus an actual assault with a deadly weapon.

At sentencing, the court considered probation reports showing that Mullins, who was on probation at the time of this offense, had been unable to comply with previous probation orders.  He had committed a number of prior misdemeanor and felony offenses (including a different assault with a deadly weapon during an auto theft).  He admitted that he had been under the influence of substances at the time of the offense, and was now seeking further treatment for his mental health and addiction issues.  At the request of the court, the probation officer had investigated whether Mullins would be suitable for treatment as a mentally ill offender, but was unable to provide that program due to the diagnosis and nature of Mullins's problems.

At the sentencing hearing, the court took into account the factors that Mullins was relatively young and no one had been injured in this somewhat "borderline" case.  Accordingly, the court expressed a desire not only to protect public safety by ensuring

that Mullins complied with probation conditions, but also to place him in a program that would give him community support in addressing his anger management and drug problems. The court then imposed a two-year prison sentence and suspended it, granting him four years of probation on conditions that included identifying Mullins as a high risk offender who would be subject to magnified supervision on felony probation. Mullins was to serve 364 days in local custody, with credit given for time served.

## B. Standard of Review

A trial court has broad sentencing discretion when ruling on a motion to reduce a felony offense to a misdemeanor. (*Alvarez*, *supra*, 14 Cal.4th 968, 977.) We may only reverse such a decision where the record demonstrates a manifest abuse of the court's discretion occurred. (*Id.* at pp. 977-978.) The burden is on the moving party to demonstrate an abuse of discretion. (*Ibid.*)

When we review the record underlying a trial court decision we deem that the court has considered the relevant criteria, particularly as it relates to sentencing decisions. (*People v. Zamora* (1991) 230 Cal.App.3d 1627, 1637.) Under section 17, subdivision (b)(3), the court shall consider the nature and circumstances of the offense, the defendant's attitude toward the offense, and any traits of character evidenced by the defendant's behavior and demeanor at trial. (*Alvarez, supra,* 14 Cal.4th at p. 978.) The court's inquiry is factual in nature and discretionarily takes into consideration all relevant factors, including the defendant's criminal past and public safety. (*Id*. at pp. 981-982.)

## C.  Analysis

The record demonstrates that the trial court was well informed about all the relevant factors for an appropriate sentencing decision.  Even though the court at times had referred to the case as a "borderline" assault with a deadly weapon, the court did not minimize the conduct shown at the time of the offense, or the legal problems that Mullins had encountered in recent years.  Mullins had performed poorly on probation and was evidently in need of more supervision and treatment.  The trial court took into account the facts surrounding the crime and Mullins's personal history, and made a decision that fell well within the scope of the broad discretion afforded to a judge at sentencing.

Reasonable judges might well have reached a different decision in this case.  That is, however, not the test.  (*Alvarez, supra*, 14 Cal.4th at pp. 977-978.)  This type of decision is properly left to the sound discretion of the trial courts.  Based on the record before us, we cannot say the trial court exceeded the bounds of reason or that its decision was unreasonable or arbitrary.

## DISPOSITION

The judgment is affirmed.

_____
HUFFMAN, Acting P. J.

WE CONCUR:


_____
NARES, J.


_____
HALLER, J.

21