Filed 7/16/15  P. v. Ramirez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RIGOBERTO GUTIERREZ RAMIREZ,<br><br>    Defendant and Appellant. | D065135<br><br><br><br>(Super. Ct. No. JCF31279) |


APPEAL from a judgment of the Superior Court of Imperial County, Poli Flores, Jr., Judge.  Affirmed.


Helen S. Irza, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Rigoberto Gutierrez Ramirez of second degree robbery (Pen. Code, § 211)[1] and assault with a deadly weapon (§ 245, subd. (a)(1)). Following his conviction, the court found that Ramirez had suffered a prior serious felony conviction. (§ 667, subd. (d).) The court sentenced Ramirez to three years in prison for his robbery conviction, which it doubled under section 667, subdivision (e)(1), for a total of six years. The court also sentenced Ramirez to three years in prison on his assault conviction, which it doubled (§ 667, subd. (e)(1)) and stayed (§ 654).

Ramirez appeals. He contends: (1) the evidence was insufficient to support his assault conviction; (2) the court erred by instructing the jury with the undefined phrase "inherently deadly weapon" in CALCRIM No. 875; (3) the evidence was insufficient to support his robbery conviction; (4) the court erred by not instructing the jury sua sponte with a unanimity instruction regarding the robbery charge; and (5) the court erred by not instructing the jury sua sponte on the defense of necessity. We conclude the evidence was sufficient to support Ramirez's assault conviction, the court did not err by using the phrase "inherently deadly weapon" in its jury instructions, the evidence was sufficient to support Ramirez's robbery conviction, any error in omitting a unanimity instruction was harmless, and the court was not required to instruct the jury on the defense of necessity. We therefore affirm.

---

1       All further statutory references are to the Penal Code unless otherwise indicated.

FACTS

In July 2013, Juan German prepared to go to sleep on a park bench in Calexico, California. German, a homeless farmworker, carried his belongings in a backpack. Another man, later identified as Ramirez, approached German. Ramirez repeatedly said, "Where's my stuff? Where's my f-ing pipe?" Ramirez spoke quickly and belligerently, and German had difficulty understanding him. Ramirez then grabbed German's backpack and proceeded to walk away. German said, "Hey, that's mine," and followed Ramirez. German grabbed at Ramirez's right arm, which was holding the backpack, and Ramirez threw back his elbow at German.

A lettuce knife, which German used in his farm work, fell out of the backpack.[2] Both men attempted to grab the knife, but Ramirez reached it first. Ramirez held the blade towards German in a threatening manner. German, who had grabbed the backpack, left it and ran away, screaming for help. Still holding the knife, Ramirez picked up the backpack and gave chase. Ramirez kept asking, "Where is it? Where is it?" As Ramirez got closer, German screamed even louder. German eventually reached a police station. Ramirez then dropped the backpack, telling German, "Here's your backpack." Ramirez left with the knife.

---

[2] At trial, German explained that a lettuce knife is a type of knife used to harvest lettuce and other vegetables. It consists of a curved blade, approximately six or seven inches in length, and a four-inch handle.

Gerardo Cordova, who lived in a nearby apartment building, heard German's screams. His wife called police. Although Cordova saw German in the park, he did not see Ramirez.

Police interviewed German, who reported what had happened. The police found Ramirez walking along a nearby road. When police approached, Ramirez told them, "I did not commit a 211," referencing the Penal Code section on robbery. The police had not mentioned a robbery or that section to Ramirez. The police detained Ramirez and brought German to his location to identify him. German identified Ramirez as his assailant. The police placed Ramirez under arrest and drove him to a police station.

In a recorded interrogation, Ramirez told police that he had been forced to move from another park earlier in the day. During the move, Ramirez said, his backpack had been stolen. (The police confirmed that officers on the previous shift had told a group of homeless people to move from the park that day; they did not receive a report of a missing backpack.) Ramirez said that German's backpack looked similar to his backpack. Ramirez said he asked German whose backpack it was and whether he could look inside. German refused. Ramirez claimed German's knife then fell out of the backpack. Ramirez admitted picking up the knife but denied chasing German. Ramirez also admitted that German was scared and ran away screaming, though Ramirez claimed not to know why. Ramirez speculated that German was a gang member. Ramirez denied robbing German or hurting anyone.

Later, police transported Ramirez to jail. On the way, Ramirez talked constantly about the incident, and the police officer transporting Ramirez had to tell him to "shut

4

up."  Among other things, Ramirez said "I can't believe he ratted on me, but he will probably get subpoenaed and won't show up and the case will be dropped" and "Who said that they saw me?  Was it that lady at the park?  She's drunk and . . . she is not credible."

The police officer did not believe German or Ramirez was intoxicated or under the influence of drugs at the time of the incident.  When Ramirez was detained, he no longer had the knife.  The knife was never located.

At trial, German, Cordova, and a police officer testified for the prosecution.  An audiotape of Ramirez's interrogation was played for the jury.  Ramirez's counsel presented a claim of right defense to the robbery charge, arguing that Ramirez had a good faith belief the backpack was his.  Ramirez's counsel also argued, among other things, that Ramirez's actions did not constitute robbery or assault.

### DISCUSSION

### I

Ramirez first challenges the sufficiency of the evidence supporting his conviction for assault with a deadly weapon.  "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  (§ 240.)  "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished . . . ."  (§ 245, subd. (a)(1).)

"To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt.  [Citation.]  The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and

of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*); see *People v. Brown* (2012) 210 Cal.App.4th 1, 7, fn. 2.)

Ramirez contends the lettuce knife did not constitute a deadly weapon under the statute. "As used in section 245, subdivision (a)(1), a 'deadly weapon' is 'any object, instrument or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.' [Citation.] Some few objects, such as dirks and blackjacks, have been held to be deadly weapons as a matter of law; the ordinary use for which they are designed establishes their character as such. [Citation.] Other objects, which not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury. In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the

6

nature of the object, the manner in which it is used, and all other facts relevant to the issue." (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028-1029 (*Aguilar*).)

"In assault with a deadly weapon, the character of the particular agency employed is the substance of the offense. While a knife is not an inherently dangerous or deadly instrument as a matter of law, it may assume such characteristics, depending upon the manner in which it was used, and there arises a mixed question of law and fact which the jury must determine under proper instructions from the trial court." (*People v. McCoy* (1944) 25 Cal.2d 177, 188 (*McCoy*).) " 'When it appears . . . that (such) an instrumentality . . . is capable of being used in a "dangerous or deadly" manner, and it *may be fairly inferred from the evidence that its possessor intended on a particular occasion to use it as a weapon should the circumstances require, we believe that its character as a "dangerous or deadly weapon" may be thus established, at least for the purposes of that occasion.*' " (*Id.* at pp. 188-189; see *People v. Page* (2004) 123 Cal.App.4th 1466, 1471 (*Page*).)

Here, the nature of the lettuce knife, the manner in which Ramirez used it, and the surrounding circumstances show that the knife was a deadly weapon within the meaning of section 245. The knife, with a blade six or seven inches in length, was plainly capable of inflicting death or great bodily injury. Ramirez held the lettuce knife by its handle in a threatening manner with its blade pointed toward German. When German ran away, Ramirez pursued him with knife in hand. Ramirez's actions occurred at night, when the men were alone, following belligerent words and a scuffle over German's backpack. Under these circumstances, the jury could reasonably conclude Ramirez intended to use

7

the knife as a deadly weapon, rather than some other purpose.  (See *Page, supra*, 123 Cal.App.4th at p. 1473.)

Ramirez points out that Ramirez did not make any stabbing or slashing motions with the knife.  Such actions, however, were not necessary to establish that the knife was a deadly weapon.  "To warrant conviction of such offense it was not necessary that the prosecution introduce evidence to show that appellant *actually made an attempt to strike or use the knife upon the person of the [victim]*."  (*McCoy, supra*, 25 Cal.2d at p. 189; see *People v. Vorbach* (1984) 151 Cal.App.3d 425, 429.)  "[A]n instrument can be a deadly weapon even if it is not actually used with deadly force."  (*Page, supra*, 123 Cal.App.4th at p. 1472.)  The details of the chase also would not prevent a reasonable jury from finding that the knife was a deadly weapon, contrary to Ramirez's assertion.  Unlike *People v. Beasley* (2003) 105 Cal.App.4th 1078, 1087-1088, on which Ramirez relies, the evidence showed that the weapon here—a knife with a blade six or seven inches in length—could have inflicted death or serious injury on German.

Moreover, to the extent Ramirez contends the evidence was insufficient to prove his actions constituted an assault (see *Page, supra*, 123 Cal.App.4th at p. 1472), his contention is unpersuasive.  "Although temporal and spatial considerations are relevant to a defendant's 'present ability' under section 240, it is the ability to inflict injury on the present occasion that is determinative, not whether injury will necessarily be the instantaneous result of the defendant's conduct."  (*People v. Chance* (2008) 44 Cal.4th 1164, 1171 (*Chance*).)  "One may commit an assault without making actual physical contact with the person of the victim; because the statute focuses on *use* of a deadly

8

weapon or instrument . . . , whether the victim in fact suffers any harm is immaterial." (*Aguilar, supra*, 16 Cal.4th at p. 1028.) "In [one early case], the defendant approached within seven or eight feet of the victim with a raised hatchet, but the victim escaped injury by running to the next room and locking the door. [The defendant] committed assault, even though he never closed the distance between himself and the victim, or swung the hatchet." (*Chance, supra*, 44 Cal.4th at p. 1174, citing *People v. Yslas* (1865) 27 Cal. 630, 631, 633-634.) The evidence here shows that Ramirez grabbed the lettuce knife, held it towards German in a threatening manner, and chased German across the park while German screamed in terror. This evidence is sufficient to support Ramirez's conviction for assault with a deadly weapon.

## II

Ramirez next contends the court erred by instructing the jury with the phrase "inherently deadly" as used in CALCRIM No. 875. The instruction used by the court reads, in relevant part, as follows: "A deadly weapon other than a firearm is any object, instrument, or weapon that is inherently deadly or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury."

"In considering a claim of instructional error we must first ascertain what the relevant law provides, and then determine what meaning the instruction given conveys. The test is whether there is a reasonable likelihood that the jury understood the instructions in a manner that violated the defendant's rights. [Citation.] We determine the correctness of the jury instruction[s] from the entire charge of the court, not from

9

considering only parts of an instruction or one particular instruction." (*People v. Smith* (2008) 168 Cal.App.4th 7, 13.)

Ramirez claims this phrase does not adequately inform the jury of the distinction between weapons that are deadly per se, i.e., those that are designed to be deadly, and weapons that are deadly only under the circumstances of a given case. (See, e.g., *Aguilar, supra*, 16 Cal.4th at pp. 1028-1029.)

We conclude the instruction adequately informs the jury of the two categories of deadly weapons and there is no reasonable likelihood the jury interpreted the instruction in a manner that misdescribed the elements of the offense. The phrase "inherently deadly" is juxtaposed against the requirement that noninherently deadly weapons be "used in such a way that is capable of causing and likely to cause death or great bodily injury." This juxtaposition shows that "inherently deadly" weapons are those that are deadly regardless of the manner of their use, i.e., those whose "ordinary use for which they are designed establishes their character as such." (*Aguilar, supra*, 16 Cal.4th at p. 1029.) We therefore disagree with Ramirez's speculation that the court's jury instruction would confuse a jury into believing that an axe or rusty nail is "inherently deadly" because they have essential characteristics that are capable of producing death (e.g., a sharp edge). Objects that are only capable of producing death fall into the second category, and are not "inherently deadly," as the court's jury instruction explains.

### III

Ramirez argues the evidence was insufficient to convict him of robbery under section 211. Our standard of review for sufficiency of the evidence remains the same.

(See part I, *ante*; *People v. Zamudio, supra*, 43 Cal.4th at p. 357.) " 'Robbery is the taking of "personal property in the possession of another against the will and from the person or immediate presence of that person accomplished by means of force or fear and with the specific intent permanently to deprive such person of such property." [Citation.]' [Citations.] 'If the other elements are satisfied, the crime of robbery is complete without regard to the value of the property taken.' " (*People v. Clark* (2011) 52 Cal.4th 856, 943.)

The evidence here was sufficient to support Ramirez's robbery conviction. Ramirez took German's backpack from German's immediate possession, walked away with the backpack, swung his elbow back at German when German attempted to retrieve it, and wielded German's knife against him when German confronted Ramirez. These facts show that Ramirez took German's backpack from him, against his will, by means of force or fear. Ramirez's intent to permanently deprive German of his backpack can reasonably be inferred by Ramirez's attempt to walk away with the backpack after he initially took it. The fact that Ramirez subsequently dropped the backpack does not negate this reasonable inference. (See *People v. Hill* (1998) 17 Cal.4th 800, 852 ["[O]nce there has been a taking, 'it is no defense that the property taken was restored, even though this occurs almost immediately.' "].) Similarly, although Ramirez presented a claim of right defense based on Ramirez's alleged belief the backpack was his (see *People v. Tufunga* (1999) 21 Cal.4th 935, 950), the jury's verdict shows it disbelieved Ramirez. We may not reweigh this credibility determination on appeal. (See *Zamudio, supra*, 43 Cal.4th at p. 357; *People v. Snow* (2003) 30 Cal.4th 43, 66.)

11

The evidence was also sufficient to support Ramirez's robbery conviction based on the knife alone. In addition to taking German's knife while it was in the backpack, Ramirez picked up the knife after it fell from German's backpack. Ramirez held the knife towards German in a threatening manner and, unlike the backpack, did not return it. Ramirez's failure to return the knife, as well as his earlier action walking away with German's backpack, shows that Ramirez intended to permanently deprive German of the knife throughout the incident. We therefore disagree with Ramirez's claim that his intent to deprive could only have arisen after he grabbed the knife. (See *People v. Bradford* (1997) 14 Cal.4th 1005, 1055-1056.)

IV

Given the evidence, as we have just discussed, that Ramirez's robbery conviction could rest on the taking of either German's backpack or his knife, Ramirez argues that the court erred by not providing a unanimity instruction sua sponte. "When an accusatory pleading charges the defendant with a single criminal act, and the evidence presented at trial tends to show more than one such unlawful act, either the prosecution must elect the specific act relied upon to prove the charge to the jury, or the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act. [Citation.] The duty to instruct on unanimity when no election has been made rests upon the court sua sponte." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534 (*Melhado*).)

The Attorney General contends the prosecution elected to proceed on the basis of the backpack alone. In order for an election to be effective, a prosecutor must "directly

12

inform the jurors of his election and of their concomitant duties . . . ." (*Melhado, supra*, 60 Cal.App.4th at p. 1536.) Here, the prosecution made no such election. While the prosecutor discussed the taking of the backpack, he never informed the jury it was the only basis for the robbery charge. Moreover, in closing arguments, the prosecution expressly argued that taking the knife constituted robbery. For example, the prosecution rebutted Ramirez's statement to police, " 'Because I didn't do a 211. I didn't take nothing from nobody,' " by stating, "He did take the knife. Really, he did take the knife." Similarly, the prosecution explained, "We know that the defendant had the knife because he admitted to holding it. Then he runs away and we never see the knife again. I think that is pretty self-explanatory." To rebut Ramirez's claim of right defense, the prosecution pointed directly to the knife: "Either way he knew that knife did not belong to him. He knew the backpack did not belong to him. So those two items alone, how is there a claim of right to either of those two things?" The Attorney General's contention that the prosecution elected to proceed based only on the backpack is unpersuasive.

However, even assuming the court should have given a unanimity instruction under these circumstances (cf. *People v. Riel* (2000) 22 Cal.4th 1153, 1199), any error was harmless. "Failure to give a unanimity instruction is governed by the harmless error standard of *Chapman v. California* (1967) 386 U.S. 18, 24, which requires the error to be harmless beyond a reasonable doubt." (*People v. Thompson* (1995) 36 Cal.App.4th 843, 853 (*Thompson*).) "Where the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and the jury must have believed beyond a reasonable doubt that defendant committed all acts if he committed

13

any, the failure to give a unanimity instruction is harmless. [Citation.] Where the record indicates the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence, the failure to give the unanimity instruction is harmless." (*Ibid*.)

Here, to the extent there was conflicting evidence of Ramirez's guilt, it rested on an assessment of Ramirez's credibility when he told police he thought German's backpack belonged to him. Ramirez's defense to robbery was based on a claim of right, and the court instructed the jury on the elements of that defense. During closing argument, Ramirez's counsel focused exclusively on that defense. Ramirez's counsel did not distinguish the facts surrounding the knife or present any separate defense to robbery based on the knife. The prosecution, for its part, interpreted Ramirez's claim of right defense as applying to both the backpack and the knife. The jury's guilty verdict shows it rejected Ramirez's version of the events and his claim of right defense. Under these circumstances, "the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence," and any error was harmless. (*Thompson, supra*, 36 Cal.App.4th at p. 853.)

Ramirez claims he presented a separate defense to robbery based on the knife, i.e., that there was no union of act and intent. We disagree. Although the jury was instructed that robbery requires the union of act and intent, Ramirez did not present a defense based on that principle to the jury. As we have noted, Ramirez presented a claim of right defense as to the backpack and did not present a separate defense as to the knife. Without some indication in the record that the jury could have distinguished between robbery

14

based on the knife and robbery based on the backpack, the omission of a unanimity instruction was harmless beyond a reasonable doubt. (*Thompson, supra*, 36 Cal.App.4th at p. 853.) We find unpersuasive Ramirez's contention that the length of the jury's deliberations, or its request to have German's testimony read back, show that the error was prejudicial. "[O]n the record before us, we cannot speculate that this implied the jury believed it was a close case or it has some question about whom to believe." (*People v. Tamborrino* (1989) 215 Cal.App.3d 575, 587.)

V

Ramirez contends the court erred by not instructing the jury sua sponte on the defense of necessity. "A trial court has a sua sponte duty to instruct regarding a defense if there is substantial evidence to support the defense and it is not inconsistent with the defendant's theory of the case. [Citation.] In deciding whether there is substantial evidence, 'the trial court does not determine the credibility of the defense evidence, but only whether "there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt . . . ." ' " (*People v. Saavedra* (2007) 156 Cal.App.4th 561, 567.) "On review, we determine independently whether substantial evidence to support a defense existed." (*People v. Shelmire* (2005) 130 Cal.App.4th 1044, 1055.)

"To justify an instruction on the defense of necessity, there must be evidence sufficient to establish that defendant violated the law (1) to prevent a significant evil, (2) with no adequate alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief in the necessity, (5) with such belief being

15

objectively reasonable, and (6) under circumstances in which he did not substantially contribute to the emergency." (*People v. Pepper* (1996) 41 Cal.App.4th 1029, 1035.)

Ramirez contends the evidence supports an instruction on the defense of necessity to both the assault charge and the robbery charge. Ramirez argues that he was compelled by necessity to grab the knife when it fell from German's backpack. We disagree. Even assuming the other elements are supported by substantial evidence, Ramirez has not shown that substantial evidence supports the proposition that Ramirez had an objectively reasonable belief that he was preventing a significant evil by taking German's knife and assaulting him with it.

Given German's version of the events (on which Ramirez appears to rely for purposes of this defense), when the knife fell out of the backpack, any reasonable person in Ramirez's position would have realized the knife (and thus likely the backpack) was not his. German's mere act of picking up his own knife did not pose the threat of significant evil that needed to be prevented. When German attempted to grab the knife, any reasonable person would have seen this action as an attempt to regain his own property, not a prelude to offensive violence. Under these circumstances, a reasonable person would not have believed it was necessary to grab German's knife and wield it against him to prevent a significant evil. Any reasonable person would have viewed retreat, or some other means of de-escalating the situation, as a reasonable alternative.

Under Ramirez's version of the events, any belief in necessity was even more unreasonable. Ramirez told police he asked German whether he could look inside the backpack. German refused, and the knife fell out. While German may have grabbed for

16

the knife at that point, there was no indication he sought to use it offensively. Under these circumstances as well, a reasonable person would not have believed it was necessary to grab German's knife and wield it against him to prevent a significant evil.

We conclude there was no substantial evidence supporting a defense of necessity. The court did not err by not instructing the jury on such a defense. (See *People v. Saavedra, supra*, 156 Cal.App.4th at p. 567.)

DISPOSITION

The judgment is affirmed.

BENKE, Acting P. J.

WE CONCUR:

HALLER, J.

AARON, J.

17